UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **KEVIN BELTON** | **CASE NO.  3:25-CV-01858** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **H2 LEGAL, LLC**<br>**and PAUL HEATH HATTAWAY** | **MAG. JUDGE KAYLA D.**<br>**MCCLUSKY** |

**MEMORANDUM RULING**

Before the Court is a Motion to Dismiss [Doc. No. 14] filed by Defendants, H2

Legal ("H2") and Paul Heath Hattaway ("Hattaway") (collectively, "Defendants").

Plaintiff, Kevin Belton ("Belton"), opposes this motion [Doc. No. 16]. Defendants filed

a reply [Doc. No. 17].

For the following reasons, the Motion is **GRANTED**.

## I.     Background

This is a legal malpractice suit. In 2019, the Louisiana Fair Housing Action

Center ("LFHAC") informed Belton that Clifford Osborne ("Osborne"), one of Belton's

tenants, would sue him under the Fair Housing Act.[1] Belton then contacted

Defendants, who agreed to try and settle the case for Belton.[2] Even so, Belton never

contracted with Hattaway and only paid him once.[3] On February 18, 2020, Osborne

filed suit against Belton in this Court.[4] In May 2020, Hattaway agreed with Osborne's

counsel to waive service.[5]

---

[1] [Doc. No. 1-4, ¶¶ 3–4].
[2] [Id. at ¶ 5].
[3] [Id. at ¶ 6]
[4] [Id. at ¶ 5].
[5] [Id. at ¶¶ 5–7].

In June 2020, Osborne sought a default judgment against Belton.[6] But Hattaway and Osborne's first attorney, Elizabeth Owen ("Owen"), agreed to pause the suit without advance notice due to Hattaway's mental health issues.[7] In June 2020, Owen left LFHAC and Cashuana Hill ("Hill") replaced her.[8] Hill filed a second entry of default judgment, which the court granted on June 30, 2020.[9] Hattaway only enrolled as Belton's counsel a week later.[10] On July 21, 2021, Hattaway moved the Court to vacate the entry of default against Belton due Hattaway's mental health issues and relocation to Oregon in November 2020.[11] Yet Hattaway never informed Belton of this move or the proceedings against him.[12] The Court granted Hattaway's motion and vacated the default judgment the next day, July 22, 2021.[13]

On September 7, 2021, Hattaway filed a motion to dismiss, which the Court denied three days later.[14] In January 2022, Osborne served Hattaway with discovery requests that were due by February 23, 2022.[15] Hattaway responded nine days after the deadline, resulting in the requested admissions being deemed admitted.[16] Even when Hattaway eventually responded, he did not move to withdraw the concessions.[17]

---

[6] [Id. at ¶ 8].
[7] [Id. at ¶¶ 8–9].
[8] [Id.].
[9] [Id.].
[10] [Id. at ¶ 9].
[11] [Id. at ¶¶ 9–10].
[12] [Id. at ¶ 10].
[13] [Id.].
[14] [Id. at ¶ 11].
[15] [Id.].
[16] [Id.].
[17] [Id.].

In June 2022, Osborne moved for summary judgment, which Hattaway did not oppose or otherwise appeal, resulting in an $89,991.80 award against Belton.[18] Osborne moved to enforce the judgment in September 2022, which Hattaway again did not oppose.[19] Belton learned of the lawsuit and judgment in November 2022, filed a *pro se* motion for a hearing on December 1, 2022, and appeared in court for the hearing with new counsel on December 12, 2022.[20]

In 2022, the Legal Director of LFHAC complained to the Office of Disciplinary Counsel ("ODC") about Hattaway's conduct. *In Re Hattaway*, 404 So. 3d 635 (La. 2025) (hereinafter, "the Per Curiam Opinion"). In January 2024, ODC filed formal charges against Hattaway, alleging his conduct set forth above violated Rules 1.1(a), 1.3, 1.4, 1.16(a), 1.16(d), 3.2, 5.5(a)(e)(3), 8.4(a), and 8.4(d) of the Louisiana Rules of Professional Conduct. *Id.* at 637–38. In response, Hattaway stipulated to the facts as alleged and requested a mitigation hearing. *Id.* Before the hearing, Hattaway also admitted that he violated the above-listed rules. *Id.* at 638. At the August 14, 2024, mitigation hearing, Hattaway testified that his mental health issues and the Judges and Lawyers Assistance Program's failure in providing him assistance should mitigate his actions. *Id.* at 638–40. The hearing committee's report recommended that Hattaway receive a fully deferred sixty-day suspension from the practice of law and that he cover the costs of the disciplinary proceedings. *Id.* On April 8, 2025, the Louisiana Supreme Court affirmed the committee's report. *Id.* at 642.

---

[18] [Id. at ¶ 14].
[19] [Id. at ¶ 15].
[20] [ Id. at ¶¶ 16–18].

Belton filed this suit in state court against Hattaway and H2 on October 15, 2025, alleging that Hattaway's conduct constituted fraud and legal malpractice under Louisiana law, and, as a result, the $89,991.80 judgment was wrongfully obtained against him.[21] Belton seeks to recover the $89,991.80 wrongful judgment along with attorneys' fees and court costs he incurred while trying to overturn the prior judgment.[22] Defendants removed the case to this Court, citing diversity jurisdiction.[23]

Defendants filed this Motion, alleging that Belton's claims are prescribed, perempted, and otherwise barred under Louisiana law.[24]

The parties briefed all relevant issues, and the matter is ripe.

## II.    Legal Standard

Ordinarily, a Rule 12(b) motion must be made before a responsive pleading is filed. *See* Fed. R. Civ. P. 12(b); *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999). Rule 12(h)(2), however, permits a party to assert a defense for failure to state a claim upon which relief can be granted in any pleading permitted under Rule 7(a), or via a Rule 12(c) motion for judgment on the pleadings. Fed. R. Civ. P. 12(h)(2). Here, the Court may treat defendants' Rule 12(b)(6) motion as a motion for judgment on the pleadings under Rule 12(c). *See Jones*, 188 F.3d at 324; *PHI, Inc. v. Office & Professional Employees Int.'l Union*, 2010 WL 3034712, at *2 (W. D. La. July 30, 2010). In any event, the Fifth Circuit uses the same standard for a Rule 12(c) motion as it does for a Rule 12(b)(6) motion. *PHI*, 2010 WL 3034712, at *2 (citations omitted).

---

[21] [Id. at ¶¶ 20–21].
[22] [Id. at ¶¶ 22–23].
[23] [Doc. No. 1].
[24] [Doc. No. 14-2].

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A pleading states a claim for relief, inter alia, when it contains a "short and plain statement" that shows "that the pleader is entitled to relief" they seek. *Id.* 8(a)(2).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A claim is facially plausible when it contains sufficient factual content for a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Plausibility does not equate to possibility or probability; it lies somewhere in between. *See Iqbal*, 556 U.S. at 663. Plausibility only requires enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *See Twombly*, 550 U.S. at 556. Although courts must accept as true all factual allegations in the complaint, the same presumption does not extend to legal conclusions. *Iqbal*, 556 U.S. at 663. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148 (5th Cir. 2010). "Courts must focus on the substance of the relief sought and the allegations pleaded, not on the label used." *Gearlds v. Entergy Servs., Inc.,* 709 F.3d 448, 452 (5th Cir. 2013) (citations omitted).

"The notice pleading requirements of Rule 8 and case law do not require an inordinate amount of detail or precision." *Gilbert v. Outback Steakhouse of Florida Inc.*, 295 F. App'x. 710, 713 (5th Cir. 2008) (citation modified). A "complaint need not pin plaintiff's claim for relief to a precise legal theory. Rule 8 generally requires only a plausible, short, and plain statement of the plaintiff's claim, not an exposition of his legal argument." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (citation modified). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555).

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663. A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable, and that recovery is unlikely. *Twombly*, 550 U.S. at 556. Nevertheless, a court is compelled to dismiss an otherwise well-pleaded claim if it is premised upon a "meritless legal theory." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

When considering a motion to dismiss, courts are generally limited to the complaint and its proper attachments. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citation omitted). Courts may, however, rely upon "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice," including public records. *Id.*; *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citation omitted). Furthermore, "documents that a defendant

attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000) (citation modified).

Since this is a diversity suit with Louisiana law claims, the Court must apply Louisiana's substantive law even while determining whether the complaint satisfies Rules 8 and 12. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

### III. Law and Analysis

Defendants argue the Court should dismiss Belton's claims under Rule 12(b)(6) as they are perempted, prescribed, and, therefore, barred by state law.[25] Limitations is an affirmative defense and a defendant has the burden of proof. *Petrobras Am., Inc. v. Samsung Heavy Indus. Co., Ltd.*, 9 F.4th 247, 254 (5th Cir. 2021) (citing Fed. R. Civ. P. 8(c)). But "[d]ismissal is appropriate if it is clear from the face of the complaint that the claims asserted are barred by the applicable statute of limitations." *Harris v. Hegmann*, 198 F.3d 153, 156 (5th Cir. 1999). Thus, "[a] motion to dismiss may be granted on a statute of limitations defense where it is evident from the pleadings that the action is time-barred, and the pleadings fail to raise some basis for tolling." *Taylor v. Bailey Tool Mfg. Co.*, 744 F.3d 944, 946 (5th Cir. 2014) (citation omitted).

Ordinarily, Louisiana law has a one-year prescriptive period for legal malpractice suits from the date the alleged malpractice was discovered or the date it should be discovered; but even then, they must be filed within three years from the date of the alleged malpractice. *See* La. Stat. Ann. § 9:5605(A). Belton, however,

---

[25] [Id. at p. 12].

argues that since he alleges Hattaway committed fraud, the prescriptive period for torts applies.[26] Under Louisiana law, tort suits currently have a two-year prescriptive period that runs from the day an injury or damage is sustained. *See* La. Civ. Code Ann. art. 3493.1. Until 2024, however, torts had a one-year prescriptive period. *Id.* art. 3492 (2024); *see also* 2024 La. Acts 423. And unless the legislature expressly says so, such changes are not retroactive. La. Civ. Code Ann. art. 6.

Belton argues his suit is timely because the alleged fraud suspended the prescription period until the Per Curiam Opinion issued in April 2025.[27] In support, Belton provides two reasons: first, the law requires actual knowledge of malpractice; second, the continuous representation rule applies. The Court analyzes each in turn.

### A.    Constructive Knowledge

Belton alleges and then contends that he has established fraud "in this matter."[28] For purposes of this Motion, the Court assumes that is the case.

Belton contends that because no one had actual knowledge of any malpractice or violation until the Per Curiam Opinion, prescription was suspended until April 8, 2025.[29] In other words, Belton argues that actual knowledge is required for the commencement of prescription. This is not the law. Prescription begins running from the "date on which a reasonable man in the position of the plaintiff, has, or should have, either actual or *constructive knowledge* of the damage, the delict, and the relationship between them sufficient to indicate to a reasonable person he is the

---

[26] [Doc. No. 26, pp. 12–15].
[27] [Id. at p. 15].
[28] [Doc. No. 16, p. 14].
[29] [Doc. No. 16, pp. 10–15].

victim of a tort and to state a cause of action against the defendant." *Lomont v. Bennet,* 172 So. 3d 620, 638 (La. 2015) (emphasis added) (citation omitted).

Constructive knowledge is knowledge a party should be aware of and is triggered by "whatever notice is enough to excite attention and put the injured party on guard and call for inquiry." *Teague v. St. Paul Fire & Marine Ins. Co.*, 974 So. 2d 1266, 1276–77 (La. 2008). In fact, the law does not require an attorney directly inform a plaintiff of when prescription begins running their claim. *Davidson v. Glenwood Resolution Auth., Inc.*, 108 So. 3d 345, 352 (La. App. 2013). But "the prescriptive period does not begin to run against a party who is ignorant of the *facts* upon which his claim is based . . . ." *Smith v. Booth*, 669 So. 2d 682, 684 (La. App. 2020).

Louisiana courts use a three-factor test to determine whether a plaintiff should have reasonably discovered their cause of action for malpractice. They are: (1) the plaintiff's statements reflecting his dissatisfaction with, or suspicions of, the attorney's actions, and whether the plaintiff investigated his accusations or suspicions; (2) the plaintiff's hiring of another attorney; and (3) the issuance of an adverse judicial ruling. *Ohle v. Rinck*, 357 So. 3d 496, 504 (La. App. 2023) (quoting *Miralda v. Gonzalez*, 160 So. 3d 998, 1011 (La. App. 2015)).

All three factors indicate that Belton had constructive knowledge of his malpractice claims no later than December 12, 2022.

On the first factor, Belton's complaint states that "upon information and belief, it was not until November 2022 that Belton became aware of the lawsuit and sizeable

judgment that had been taken against him as a result of Hattaway's negligence."[30] Belton's statements clearly reflect his suspicions of the attorney's actions. Belton's December 1, 2022, *pro se* filing, seeking a hearing, stated that Hattaway "moved out of state" and "has since been non-responsive to any correspondence regarding this case."[31] Belton's suspicions and dissatisfaction with the attorney's actions are self-evident in these statements, and investigating his suspicions on the matter led him to hire new counsel—the second factor.

As to the second factor, Belton's December 1, 2022, *pro se* motion, requesting a hearing, indicates his intent to hire and appear with new counsel.[32] And on December 12, 2022, Belton appeared at the requested hearing with new counsel.[33] While hiring new counsel is not dispositive, it satisfies the second factor and strongly reaffirms that Belton sufficiently knew of Hattaway' inadequate performance.

Turning to the third factor, the adverse judgment against Belton occurred in June 2022, when the Court granted Osborne's motion for summary judgment and entered judgment against Belton for $89, 991.80.[34] Belton alleges he learned of the judgment against him in November 2022.[35] Since, however, Belton only arrived in Court with new counsel in December 2022, the Court draws the favorable inference that Belton learned of the adverse judgment against him at that time.

---

[30] [Doc. No. 1-4, ¶ 16].
[31] [Id. at ¶ 17].
[32] [Id.].
[33] [Id. at ¶¶17–18].
[34] [Id. at ¶ 15].
[35] [Id. at ¶ 16].

Applying the three *Ohle* factors here, the Court concludes Belton had constructive notice of Hattaway's malpractice at the latest by December 2022. A reasonable person in the Belton's shoes should have had constructive knowledge—based on the damage (the $89, 991.80 judgment), the tort (fraudulent malpractice), and the relationship between himself and Hattaway—that he is the victim of the tort no later than December 12, 2022. *Lomont*, 172 So. 3d at 638 (citation omitted). The record definitively reflects that Belton could not be ignorant of "the facts upon which his claim is based" after December 12, 2022. This is all that is required to commence prescription under clearly established state law. *Smith,* 669 So. 2d at 684.

Belton's counsel contends that "**no one**, **including Belton**, had **actual knowledge**" of any type of malpractice or violations until the Supreme Court of Louisiana's report on April 8, 2025.[36] But if the Court found that prescription did not begin to run until such date and time, the Court would be "ignoring the law on constructive notice." *Davidson*, 108 So.3d at 352.

The Court finds that, when viewed in the light most favorable to Belton, prescription began to run on December 12, 2022, the date on which he had, or should have had, constructive knowledge.

As mentioned at the outset, the prescriptive period for torts in 2022 was one year from the day the damage or injury was sustained, absent suspension or other exception. *See* La. Civ. Code Ann. art. 3492 (2024). Here, the Court recognizes that prescription for Belton's claims was suspended until he had, or should have had,

---

[36] [Doc. No. 16, p. 16].

constructive knowledge, which occurred no later than December 12, 2022. Under the one-year prescriptive period, Belton's claims prescribed after December 12, 2023. *See id.* Even if the current two-year prescriptive period that Belton seeks governs, his claims prescribed after December 12, 2024. *See* La. Civ. Code Ann. art. 3493.1.

Even if the malpractice statute, La. Stat. Ann. § 9:5605, applied (if fraud is not established), Belton's action is untimely. Under section (E) of the malpractice statute, a plaintiff has one year from the date of the alleged act, omission occurred, or one year from the time such conduct should have been discovered, but in no event shall they file later than three years from the date of the conduct giving rise. *Id.* § 9:5605(E). The last alleged act of malpractice occurred in September 2022,[37] and Belton had, or should have had, constructive knowledge in December 2022. So, under that statute also, Belton's claims prescribed in December 2023. *See id.*

To sum, the Court concludes only constructive knowledge is necessary for prescription and finds that Belton's claims are untimely under all theories unless they were suspended beyond December 12, 2022.

### B.   Continuous Representation

The Court now turns to the issue of continuous representation.

As the period prescribed for torts governs malpractice actions where fraud is established, the applicable time period is prescriptive rather than peremptive. *Lomont,* 172 So.3d at 637. Although Louisiana law says prescription runs against all persons, La Civ. Code art. 3493.1, the Louisiana Supreme Court recognizes four

---

[37] [Doc. No. 1-4, ¶¶15–23].

exceptions to prescription under the *contra non valentem* doctrine. *Lomont*, 172 So. 3d at 637 (citing *Fontenot v. ABC Ins. Co.*, 674 So.2d 960, 963 (La. 1996)). Under *contra non valentem*, "prescription does not run against one unable to act." *Perez v. Shook*, 703 So. 2d 821, 825 (La. App. 1997). Courts apply this doctrine to soften the harshness of prescriptive statutes by suspending the running of prescription.

Belton argues that the third prong of *contra non valentem* suspends prescription in this case. This prong applies "where the debtor himself has done some act effectually to prevent the creditor from availing himself of the cause of action." *Id.* at 835 (citing *Lima,* 595 So. 2d 624, 630); *see also Lomont,* 172 So.3d at 637. From this prong comes the continued representation doctrine.

The continuous representation doctrine suspends prescription when fraud exists and the attorney continues to represent the former client. *Lomont*, 172 So. 3d at 637 (citing *Braud v. New England Ins. Co.,* 576 So. 2d 466, 468 (La. 1991)). The attorney's representation of the client must be continuous to suspend prescription under the continuous representation doctrine. *Perez,* 703 So. 2d at 825–26. In effect, the continuous representation doctrine replaces the date of discovery of fraud with the conclusion of continuous representation to commence prescription. Representation is deemed continuous for purposes of this doctrine only where there is "a clear indicia of an ongoing, continuous, developing, and dependent relationship between the client and the attorney." *Id.*

In instances where fraud is established, the continuous representation doctrine suspends prescription until the representation terminates or concludes. The

Page **13** of **18**

Supreme Court of Louisiana aptly illustrated the rule's application in *Lima,* where they borrowed from the Supreme Court of North Dakota:

> [T]he continuous representation rule appropriately protects the integrity of the attorney-client relationship and affords the attorney an opportunity to remedy his error (or to establish that there has been no error), while simultaneously preventing the attorney from defeating the client's cause of action through delay.

*Lima v. Schmidt,* 595 So. 2d 624, 630 (La. 1992) (quoting *Wall v. Lewis,* 393 N.W.2d 758, 763 (N.D.1986)) (superseded by statute on other grounds). Put simply, continuous representation can only suspend prescription if the attorney's representation is continuous and the termination of the attorney-client relationship brings the period of continuous representation to a close. This conclusion of continuous representation ultimately results in the lifting of prescriptive suspension in the presence of current or precedent constructive knowledge.

Belton states that Hattaway's representation was continuous "during this entire period."[38] Belton argues that this action, filed on October 15, 2025, is timely for two reasons: (1) because "Mr. Hattaway continuously represented Mr. Belton and never withdrew," prescription was suspended under the continuous representation rule, and (2) because the Per Curiam Opinion was released on April 8, 2025.[39]  The Court presumes that Belton's reference to the "entire period" extends to the date the Louisiana Supreme Court issued the Per Curiam Opinion. Belton tries to establish

---

[38] [Doc. No. 16, p. 14].
[39] [Id. at pp. 14–15].

that representation continued beyond 2022 because Hattaway neither withdrew,[40] nor did he report anything about the underlying case to his client.[41]

Belton cites to *Braud*, 576 So. 2d at 468, to argue that "[d]uring [this period of] continuous representation of the client, regarding the specific subject matter in which the alleged wrongful act or omission occurred, prescription will be suspended."[42] Belton's statement that prescription is suspended only if the attorney's representation is continuous is correct, though to his detriment.

The Court finds there are no facts in the record to support the conclusion of a "clear indicia of an ongoing, continuous, developing, and dependent relationship" between Belton and Hattaway. *Id.* Rather, Belton repeatedly emphasizes the lack of communication between himself and Hattaway both during the representation and after the hiring of new counsel.[43] While it is true that the prescriptive period was suspended during the limited period when Hattaway continuously represented Belton, that suspension ceased upon the termination of the attorney-client relationship. In other words, prescription begins to run once the representation ceases to be continuous and the client possesses (or should possess) constructive knowledge of their claims.

Belton's argument that Hattaway's failure to withdraw and failure to communicate constitute continuous representation also falls short. Much like a negative doctrine, the attorney-client relationship may be terminated when the facts

---

[40] [Id. at p. 15].
[41] [Id.].
[42] [Id. at p. 13].
[43] [Doc. 1-4 ¶¶ 3–33]; [Doc. No. 16, pp. 9–11].

indicate that it has ended. *Succession of Smith v. Kavanaugh, Pierson & Talley*, 565 So. 2d 990, 995–96 (La. App. 1990). In other words, the attorney-client relationship may be terminated by the absence of facts supporting its existence. *Id.*

The lack of contacts and services rendered to Belton by Hattaway following the September judgment, coupled with Belton's hiring of new counsel for representation in the same subject matter in December, emphatically suggests that Belton and Hattaway's attorney-client relationship ended. *Id.* Accordingly, the Court finds the parties' attorney-client relationship terminated no later than December 12, 2022.

Belton relies heavily on *Lomont* in his brief. In *Lomont,* the attorney-defendant continued to actively represent the client-plaintiff and hid her malpractice by communicating to the plaintiff that the problem could be fixed, and she was working on it. *Id.* at 638. The *Lomont* court found there was a long personal relationship between the two that substantiated the reasonableness of the plaintiff's trust in the defendant to resolve the issue during the continued representation. *Id.* The attorney discontinued her representation of the client only once the peremptive period had expired, and the former client filed her malpractice suit against the defendant only two weeks after meeting with another attorney. *Id.*

The Court, in part, distinguishes *Lomont* from this case. As shown by the record, Belton possessed sufficient knowledge to trigger prescription. In *Lomont,* however, the court explicitly found that although the client was aware of the malpractice well in advance, the attorney continued to actively represent the client

and made misrepresentations to "lull the client" into inaction, thereby ensuring the peremptive period would expire before her representation concluded. *Id.* at 634–39.

The Court finds none of these determinative facts present here. While the Court recognizes *Lomont*'s holding, where post-malpractice concealment can amount to fraud, lack of continuous representation dispels the argument that Hattaway's actions were "undertaken with the intent to lull" Belton into inaction. *Lomont*, 172 So. 3d at 637–38. As Belton alleged, Hattaway did not communicate with Belton— from the time Hattaway did not oppose the adverse judgment in the original case— in a way that lulled Belton into inaction.[44]

Taking all the above-cited facts as true, the Court finds Hattaway stopped continuously representing Belton no later than December 12, 2022. The Court, therefore, finds that prescription for all malpractice claims related to Hattaway's representation of Belton began to run no later than December 12, 2022.

To sum, assuming all facts in Belton's complaint are true, the Court finds that Belton had or should have had constructive notice of Hattaway's allegedly fraudulent malpractice in the underlying suit no later than December 12, 2022. The Court also finds that Hattaway stopped continuously representing Belton no later than December 12, 2022. Applying the law to these factual findings, the Court concludes Belton's suit is untimely under Louisiana's one-year tort prescriptive period (which expired on December 12, 2023), two-year tort prescriptive period (which expired on

---

[44] [Doc. No. 1-4, ¶¶ 15–23].

December 12, 2024), or one-year malpractice prescriptive period (which expired on December 12, 2023). Accordingly, the Court must dismiss Belton's suit as untimely.

## IV.    Conclusion

For the above-stated reasons,

**IT IS ORDERED**, **ADJUDGED**, **AND DECREED** that Defendants' Motion to Dismiss [Doc. No. 14] is **GRANTED**. Plaintiff's claims are **DISMISSED WITH PREJUDICE** as they are barred by the statute of limitations, and, therefore, the Court concludes that amendment of Plaintiff's complaint would be futile as additional facts could not amend the issue. *See Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000).

MONROE, LOUISIANA, this 6th day of July 2026.

_____
TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE